## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

**SAMUEL LEE,**                                      )
                                                     )
                    **Plaintiff,**                   )
        **v.**                                       )
                                                     )        **Civil Action No. 2014-0079**
**KMART CORPORATION,**                               )
                                                     )
                    **Defendant.**                   )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
        *For Plaintiff*

**Carl R. Williams, Esq.,**
**Richard F. Farrelly, Esq.,**
St. Thomas, U.S.V.I.
        *For Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Motion to Exclude Untimely Disclosed Expert Witnesses" (Dkt. No. 55); Defendant's "Motion to Exclude Untimely Disclosed Fact Witnesses" (Dkt. No. 56); Defendant's "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report" (Dkt. No.  61); the parties' respective Oppositions and Replies (Dkt. Nos. 57, 58, 59, 60, 62, 63); and a supplemental brief, filed by Plaintiff (Dkt. No. 77), pursuant to an Order of the Court (*see* Dkt. No. 75). A hearing on Defendant's Motions was held on April 26, 2016. For the reasons that follow, the Court will grant Defendant's "Motion to Exclude Untimely Disclosed Expert Witnesses"; grant Defendant's "Motion to Exclude Untimely Disclosed Fact Witnesses"; and deny Defendant's "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report."

# I.   BACKGROUND

Plaintiff Samuel Lee ("Plaintiff") brings this negligence action against Kmart Corporation ("Defendant"), alleging that on or about July 27, 2014, Plaintiff, a business invitee of Defendant, was shopping in Defendant's store when an employee, in the course of her employment, negligently pushed "an over stacked cart" into Plaintiff. (Dkt. No. 1 at 1-2). Plaintiff contends that, as a result of the employee's actions, he suffered "physical injuries, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering, and loss of enjoyment of life all of which are expected to continue into the foreseeable future." (*Id.* at 2). Plaintiff seeks compensatory damages, pre- and post-judgment interest and attorney's fees and costs. (*See id.*).

On November 13, 2014, the Magistrate Judge of this Court, George W. Cannon, Jr., entered an Order requiring the parties to exchange initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure by December 15, 2014. (Dkt. No. 7). Plaintiff filed a Notice of Service of his initial disclosures on December 4, 2014 (Dkt. No. 8), and Defendant filed its Notice of Service on December 12, 2014 (Dkt. No. 9). On January 13, 2015, Magistrate Judge Cannon entered a Scheduling Order setting August 31, 2015 as the factual discovery deadline; September 30, 2015 as the deadline for the first mediation conference; October 30, 2015 as the deadline for Plaintiff to name experts and provide expert opinions pursuant to Rule 26(a)(2); December 30, 2015 as the deadline for Defendant to name experts and provide expert opinions pursuant to Rule 26(a)(2); and February 26, 2016 as the deadline for expert depositions. (*See* Dkt. No. 22).

On August 31, 2015, the parties filed a "Joint Motion to Extend the Factual Discovery and Mediation Deadlines." (Dkt. No. 29). In the Joint Motion, the parties asserted that "good cause" existed for modifying the Scheduling Order issued on January 13, 2015 because, despite

their best efforts, the parties were unable to comply with the original deadlines, and depositions still needed to be completed. (*See id.*).[1] The parties requested until the end of September to complete factual discovery and the end of October to complete mediation, and stated that extending the factual discovery and mediation deadlines would "not impact the remaining deadlines" in the Scheduling Order. (*Id.*).

On September 1, 2015, Magistrate Judge Cannon entered an Order amending the January 13, 2015 Scheduling Order, as the parties requested, by setting September 30, 2015 as the factual discovery deadline and October 31, 2015 as the mediation deadline. (*See* Dkt. No. 30). All of the other deadlines in the January 13, 2015 Scheduling Order remained in effect. (*See id.*). Mediation was held on October 22, 2015. (*See* Dkt. No. 41). However, the parties were unable to reach a settlement. (*See id.*).

On November 30, 2015—one month after the expiration of the deadline for Plaintiff's expert disclosures—Plaintiff filed a "Motion for Extension of Deadlines," wherein he requested to extend the deadline for filing his expert reports from October 30, 2015[2] to December 9, 2015. (Dkt. No. 46). In support of his request, counsel for Plaintiff stated that she "refrained from incurring the expense of getting all expert reports in place [before mediation on October 22, 2015] as it would make settlement more difficult as a result of the increased costs." (*Id.* at 1). Counsel stated further that, at the October 22, 2015 mediation when it became clear that the case could not settle, she asked counsel for Defendant to agree to an additional 30 days to provide expert reports. (*See id.*). According to counsel for Plaintiff, counsel for Defendant stated that "he did not think it was a problem but would check with his client." (*Id.*).

---

[1] Rule 16(b) of the Federal Rules of Civil Procedure provides that scheduling orders "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).

[2] Plaintiff's Motion states that the expert deadline was October 31, 2015. (*See* Dkt. No. 46 at 1). However, the January 13, 2015 Scheduling Order states that Plaintiff's deadline for filing expert reports was October 30, 2015. (*See* Dkt. No. 22).

Counsel for Plaintiff represents that when she did not hear back from counsel for Defendant, she "again broached the subject" with him at a status conference held on November 2, 2015, and, again, counsel for Defendant "did not oppose it but stated that he would have to check with [his client]." (*Id*. at 1-2). Plaintiff's counsel followed up by letter dated November 3, 2015, requesting an agreement to extend the deadline for filing Plaintiff's expert reports to November 30, 2015. (*See* Dkt. No. 46-1). By letter dated November 9, 2015, Defendant's counsel objected to the extension; he did not state a reason for the objection. (*See* Dkt. No. 46-2).

Plaintiff's November 30, 2015 "Motion for Extension of Deadlines" was opposed by Defendant on December 4, 2015. (Dkt. No. 49). In its Opposition, Defendant noted that Plaintiff failed to request an extension of his deadline for expert reports prior to its expiration; Plaintiff sent correspondence requesting that Defendant stipulate to an extension three days after the expiration of his expert reports deadline; and Plaintiff filed his motion for an extension thirty days after his deadline for expert reports had expired. (*See id*.). Defendant also noted that the matter had been mediated on October 22, 2015; one expert report had been received prior to mediation; Plaintiff "updated" that one report on December 2, 2015 (*see* Dkt. No. 48); and through his "Motion for Extension of Deadlines," Plaintiff sought to file additional expert reports. (Dkt. No. 49 at 3). According to Defendant, Plaintiff was "attempting to change the posture of the case to Defendant's detriment." (*Id*.).

On December 8, 2015, Magistrate Judge Cannon issued an Order denying Plaintiff's "Motion for Extension of Deadlines." (Dkt. No. 51). In the Order, Judge Cannon found that Plaintiff had "failed to establish good cause" for modifying his expert reports deadline. (*Id*. at 3). Specifically, Judge Cannon found that Plaintiff had not demonstrated "any effort or diligence" to comply with the January 13, 2015 Scheduling Order; Plaintiff "consciously decided to leave the

completion of experts until after mediation"; and Plaintiff failed to explain why he waited one month after the expert reports deadline to file a motion for an extension of time.  (*Id*. at 2).

On December 9, 2015—the day *after* Plaintiff's "Motion for Extension of Deadlines" was *denied* by Magistrate Judge Cannon—Plaintiff filed a Notice of Production of an expert report prepared by Carla Seyler, MS, CRC (Dkt. No. 52), a licensed rehabilitation counselor (*see* Dkt. No. 58-5), and a Notice of Production of an expert report prepared by Richard Moore, Ph.D. (Dkt. No. 53), an economist (*see* Dkt. No. 58-4).

On December 29, 2015, Defendant filed the pending "Motion to Exclude Untimely Disclosed Expert Witnesses." (Dkt. No. 55). Defendant notes that the Notices of Production were filed one day *after* the Court denied Plaintiff's "Motion for Extension of Deadlines" and forty days *after* Plaintiff's expert witness deadline. (*Id*. at 2). Plaintiff filed an Opposition to Defendant's "Motion to Exclude Untimely Disclosed Expert Witnesses" on January 11, 2016 (Dkt. No. 58), and Defendant filed a Reply on January 20, 2016 (Dkt. No. 59).

On December 29, 2015, Defendant also filed the pending "Motion to Exclude Untimely Disclosed Fact Witnesses." (Dkt. No. 56). In the Motion, Defendant states that on October 26, 2015—almost four weeks after the close of factual discovery on September 30, 2015—Plaintiff filed supplemental voluntary disclosures which listed fifteen additional fact witnesses. (*Id*. at 2).[3] Defendant notes that Plaintiff did not provide any explanation as to why he waited one month after the expiration of the fact witness deadline to provide notice of fifteen additional fact witnesses, especially given that the parties had previously agreed to an extension of the factual discovery deadline. (*Id*. at 3). Defendant also notes that Plaintiff "waited until after the unsuccessful mediation to supplement [his] fact witnesses." (*Id*. at 4). Plaintiff filed an

---

[3] It appears that the supplemental voluntary disclosures referenced in Defendant's "Motion to Exclude Untimely Disclosed Fact Witnesses" was actually filed by Plaintiff on October 27, 2015. (*See* Dkt. Nos. 40, 57-1 at 6).

Opposition to Defendant's "Motion to Exclude Untimely Disclosed Fact Witnesses" on January 11, 2016 (Dkt. No. 57), and Defendant filed a Reply on January 20, 2016 (Dkt. No. 60).

On January 20, 2016, Defendant filed the pending "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report." (Dkt. No. 61). In the Motion, Defendant states that before the Court ruled on Plaintiff's "Motion for Extension of Deadlines," Plaintiff, on December 2, 2015, filed a Notice of Production of an updated expert report from Dr. Jason Williams (Dkt. No. 48)—over a month after the expert witness deadline had expired. (*See* Dkt. No. 61 at 2). Defendant contends that the updated report of Dr. Williams "does not list any additional factual bases for his conclusions," but rather "list[s] a plethora of additional complaints from Plaintiff, increases the recommended treatment, and downgrades the prognosis from fair to poor." (*Id*.). Defendant asserts that the updated report "does not state what prompted Dr. Williams to spontaneously change his conclusions without any additional visits from Plaintiff." (*Id*.). Plaintiff filed an Opposition to Defendant's "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report" on February 3, 2016 (Dkt. No. 62), and Defendant filed a Reply on February 10, 2016 (Dkt. No. 63).

Oral argument on Defendant's Motions was held on April 26, 2016. The Court will now address each of Defendant's Motions in turn.

## II.     APPLICABLE LEGAL PRINCIPLES

Under Rule 26(a)(1) of the Federal Rules of Civil Procedure, a party must, "without awaiting a discovery request," disclose to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). "A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f)

conference unless a different time is set by stipulation or court order . . . ." FED. R. CIV. P. 26(a)(1)(C). Each party "must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case . . .." FED. R. CIV. P. 26(a)(1)(E).

A party must also supplement or correct its disclosures either "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or "as ordered by the court." FED. R. CIV. P. 26(e)(1)(A). As a general rule, when courts order all factual discovery, including fact witness depositions, to be completed by a certain date, supplemental disclosure of witnesses after that date is untimely. *See Fitz v. Islands Mech. Contractor, Inc.*, 2013 U.S. Dist. LEXIS 47061, at *7 (D.V.I. Apr. 1, 2013); *Gautier-James v. Hovensa, L.L.C.*, Civ. No. 2006–106, 2011 U.S. Dist. LEXIS 109756, at *12 (D.V.I. Sept. 27, 2011) (collecting cases).

In addition to the disclosures required by Rule 26(a)(1), a party must "disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2).[4] "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). Further, "[a] party must make these disclosures at the times and in the sequence that the court orders," FED. R. CIV. P.

---

[4] Rule 702 "governs the admissibility of expert testimony[.]" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *see also* FED. R. EVID. 702. "Rule 703 describes the types of materials that an expert may permissibly rely on." *Muhsin v. Pacific Cycle, Inc.*, 2012 U.S. Dist. LEXIS 80441, at *10 (D.V.I. June 8, 2012); *see also* FED. R. EVID. 703. Rule 705 provides that "an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data," but "may be required to disclose those facts or data on cross-examination." FED. R. EVID. 705.

26(a)(2)(D), and "must supplement these disclosures when required under Rule 26(e)," FED. R. CIV. P. 26(a)(2)(E).

"If a party fails to properly provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). To determine whether a discovery violation warrants excluding the associated evidence, courts in the Third Circuit consider the following factors, sometimes referred to as the *Pennypack* factors:

> (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified" or the excluded evidence would have been offered; (2) "the ability of that party to cure the prejudice"; (3) the extent to which allowing such witnesses or evidence would "disrupt the orderly and efficient trial of the case or of other cases in the court"; (4) any "bad faith or willfulness in failing to comply with the court's order"; and (5) the importance of the excluded evidence.

*See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977)). The party who fails to comply with Rule 26(a) or (e) bears the burden of demonstrating that the failure is substantially justified or harmless. *See Gautier-James*, 2011 U.S. Dist. LEXIS 109756, at *17 (citing *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008)).

## III.   DISCUSSION

In the three Motions pending before the Court, Defendant seeks to exclude 1) the expert report and testimony of Carla Seyler, MS, CRC, a licensed rehabilitation counselor, and Richard Moore, Ph.D., an economist, who were disclosed to Defendant as experts forty days after Plaintiff's court-ordered expert disclosure deadline, and one day after Magistrate Judge Cannon denied Plaintiff's motion to extend the deadline for filing expert reports; 2) the testimony of fifteen fact witnesses who were disclosed to Defendant twenty-seven days after the close of fact discovery; and 3) the updated report, and any corresponding testimony, of Dr. Jason Williams—

Plaintiff's treating physician, who has been named as an expert in this case—which Defendant contends was disclosed thirty-three days after Plaintiff's court-ordered expert disclosure deadline and contains a changed opinion.

Defendant argues that any untimely disclosed experts and witnesses should be excluded from the trial in this matter because Plaintiff has "flagrantly disregarded" the Court's Scheduling Orders and has failed to meet his burden of showing that his untimely disclosures were substantially justified or harmless, as required by Rule 37(c)(1) of the Federal Rules of Civil Procedure. Defendant asserts that it will be severely prejudiced if the untimely disclosed experts and witnesses are permitted to testify at trial. In response, Plaintiff argues that Defendant will not be prejudiced by his untimely disclosure of experts and witnesses because Defendant has not disclosed any experts of its own; Defendant did not request an Independent Medical Examination of Plaintiff ("IME"); and Defendant would not have deposed any of the untimely disclosed damage witnesses, even if they had been disclosed within the fact discovery period. According to Plaintiff, there is sufficient time, in any event, to depose the experts and witnesses before trial.

### A.   Motion to Exclude Untimely Disclosed Expert Witnesses

By Order dated January 13, 2015, the Court set October 30, 2015 as the deadline for Plaintiff to name experts and provide expert opinions pursuant to Rule 26(a)(2). Forty days *after* the October 30, 2015 deadline, and one day *after* Magistrate Judge Cannon denied Plaintiff's motion to extend his deadline for filing expert reports, Plaintiff, on December 9, 2015, filed two Notices of Production identifying—for the first time—Carla Seyler, MS, CRC ("Ms. Seyler") and Richard Moore, Ph.D. ("Dr. Moore") as experts in this case, and providing their expert reports. The deadline for Defendant to name experts and provide expert opinions was December 30, 2015. On December 29, 2015, Defendant filed the instant "Motion to Exclude Untimely

Disclosed Expert Witnesses," requesting that the Court exclude the testimony and reports of Ms. Seyler and Dr. Moore at trial.

In his Opposition to Defendant's Motion, and at the April 26, 2016 hearing, Plaintiff conceded that his disclosure of Ms. Seyler and Dr. Moore was untimely, but argues that "Defendant has failed to demonstrate that the untimely disclosure harms Defendant." (Dkt. No. 58 at 4). Plaintiff claims that Defendant could have deposed the expert witnesses before the February 26, 2016 expert deposition deadline elapsed, and can still depose the experts before trial. (*See id*.). Further, Plaintiff states that "Defendant has not requested an IME of Plaintiff or offered any counter medical expert." (*Id*. at 5). Based on the foregoing, Plaintiff contends that there is "simply no harm or prejudice to Defendant, and therefore, the extreme sanction of exclusion of these critical expert witnesses is unwarranted." (*Id*. at 5).

Plaintiff's failure to timely comply with the disclosure requirements of Rule 26(a)(2) cannot be described as either substantially justified or harmless, and exclusion of the untimely disclosed expert witnesses is therefore warranted. The Court's conclusion in this regard is substantiated by consideration of the *Pennypack* factors.

The first *Pennypack* factor—prejudice and surprise—weighs heavily in favor of Defendant. On October 22, 2015, Plaintiff timely disclosed Dr. Jason Williams, a chiropractor, as the only expert to be proffered by Plaintiff in this case. (*See* Dkt. No. 39). Based on a "Chiropractic Report," signed by Dr. Williams, it appears that Dr. Williams is prepared to testify, that Plaintiff's "treatment included [an] ice compress [], [a] warm compress, electric muscle stimulation, therapeutic ultrasound, manual therapy, [c]hiropractic adjustments, and the use of kinesiotape." (Dkt. No. 58-3 at 4).  Dr. Williams is further prepared to provide the following prognosis and recommendation:

> The prognosis for Mr. Lee is fair. His back pain has subsided but he occasionally
> has some tension and tightness in the elbow and forearm which would lead him to

10

> come into the office for treatment. My recommendation for Mr. Lee would be to utilize a maintenance care treatment plan for the treatment of his elbow.

(*Id*.).

As will be discussed herein, Plaintiff filed an updated report from Dr. Williams on December 2, 2015 (Dkt. No. 48), based on a follow-up visit on October 23, 2015. The updated portion of Dr. Williams' report provides, in relevant part, as follows:

> The prognosis for Mr. Lee is poor. His back pain has subsided but he occasionally has exacerbations with work. He still has tension and tightness in the elbow and forearm and numbness in his left 5th finger which would lead him to come into the office for treatment. My recommendation for Mr. Lee would be to utilize a maintenance care treatment plan for the treatment of his elbow at least once per month but also whenever any flare ups occur.

(Dkt. No. 62-2 at 2).

Juxtaposed against this proposed testimony is the vastly expanded damages testimony that Plaintiff's untimely disclosed experts are expected to provide. According to her report, Carla Seyler, Plaintiff's untimely disclosed vocational rehabilitation expert, intends to testify that, based on a labor market study, "it is clear that [Plaintiff] will have considerable difficulty returning to employment if he is unable to return to his usual and customary occupation as a groundskeeper." (Dkt. No. 58-5 at 6). Ms. Seyler also intends to testify that, based on information received from Dr. Williams, "it appears that [Plaintiff] is unable to work." (*Id*.). Then, according to his report, Dr. Richard Moore, Plaintiff's untimely disclosed economic expert, intends to testify that Plaintiff's "future lost earning capacity equals $839,804." (Dkt. No. 58-4 at 8). Dr. Moore also intends to testify about the "cost of future life care for [Plaintiff]" once additional information becomes available. (*See id*. at 9). Both Ms. Seyler and Dr. Moore have reserved the right to amend or supplement their opinions and reports, if additional information becomes available. (*See* Dkt. No. 58-5 at 6; Dkt. No. 58-4 at 3).

As Defendant expressed at the April 26, 2016 hearing, the opinions of Plaintiff's untimely disclosed experts "change the entire tenor of the case." Indeed, the expert opinions of Ms. Seyler and Dr. Moore offer an enormously enhanced assessment of the damages in this case. The proposed expert testimony has gone from a plaintiff with back pain that "has subsided" with "occasional[] . . . exacerbations with work" and the need for a "maintenance care plan for the treatment of his elbow," (Dkt. No. 62-2 at 2), to a plaintiff who it appears is "unable to work," (Dkt. No. 58-5 at 6), with a "future lost earning capacity [of] $839,804" (Dkt. No. 58-4 at 8) and a yet to be determined cost for "future life care" (*see id*. at 9).

Based on the posture of the case before the untimely disclosures, Defendant chose not to identify expert witnesses. However, if Ms. Seyler and Dr. Moore are permitted to testify at trial, it is reasonable to assume that Defendant will have to reanalyze the case; alter its trial strategy; consider identifying rebuttal experts and/or presenting other rebuttal evidence; and consider conducting an IME of Plaintiff. Essentially, it is like preparing a defense anew. The prejudice and surprise to Defendant is thus very significant, given the nature of the untimely proffered expert testimony. The first *Pennypack* factor, therefore, weighs heavily in favor of excluding the expert testimony of Ms. Seyler and Dr. Moore from trial.

Plaintiff's argument that any prejudice or surprise to Defendant can be cured by simply allowing Defendant to depose the experts before trial is unpersuasive. Considering that the expert testimony belatedly offered by Plaintiff effectively recasts the entire case in terms of Defendant's potential exposure to damages, curing the prejudice must necessarily involve an opportunity for Defendant to secure and designate its own expert witnesses or otherwise prepare a defense to counter Plaintiff's new experts. This significant expansion of expert discovery cannot be so casually dismissed because it will unquestionably disrupt the orderly progress of this case and

delay the trial of this matter.[5] Contrary to Plaintiff's suggestion, the *Pennypack* factors cannot be read so as to mandate the kind of alterations in the Court-ordered discovery schedule and disruption to the progress of the case that Plaintiff's untimely disclosure of the two expert witnesses would entail. Therefore, the second and third *Pennypack* factors also favor excluding the testimony of Ms. Seyler and Dr. Moore from trial.

Turning to the fourth *Pennypack* factor, the Court recognizes that exclusion of evidence "is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Pennypack*, 559 F.2d at 905).  However, the willful and flagrant disregard of this Court's Orders and the governing Federal Rules of Civil Procedure by counsel for Plaintiff is so egregious in this case that the extreme sanction of exclusion is warranted under the circumstances here. Indeed, when faced with flagrant violations, the Third Circuit has consistently "upheld the exclusion of expert witnesses as an appropriate sanction for a party's violation of a discovery order or some other pre-trial order." *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 194 (3d Cir. 2007) (quoting *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990) (internal quotation marks omitted)); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (upholding the exclusion of an expert's testimony when plaintiffs' counsel flagrantly disregarded a pretrial order).

As noted above, the Court set October 30, 2015 as the deadline for Plaintiff to name experts and provide expert opinions. On October 22, 2015—eight days prior to the October 30,

---

[5] The undersigned Chief Judge has an established policy of not setting a trial date in the initial Scheduling Order, but waiting until after any dispositive motions are resolved. The goal of this policy is to spare the parties from the need to prepare for trials and to file motions and other documents in connection therewith that may later be rendered inapt by the Court's resolution of a pending dispositive motion. As this undersigned Chief Judge has repeatedly advised, however, the absence of a trial date does not render the deadlines in the Court's Scheduling Order meaningless, nor does it give parties license to believe or argue that changes to the Court's Scheduling Order are routine and without consequence.

2015 deadline—Plaintiff's counsel sought the consent of Defendant's counsel to a thirty-day extension of the expert deadline, to which counsel for Defendant did not immediately respond. Instead of filing a timely motion with the Court to extend the deadline, on November 2, 2015—three days after the October 30, 2015 deadline had passed—Plaintiff's counsel again made the same request of Defendant's counsel. Once again, Defendant's counsel did not immediately respond, and no motion for an extension was filed with the Court. Defendant's counsel formally objected to Plaintiff's request for an extension of time by letter dated November 9, 2015. Notwithstanding that it was now ten days after the October 30, 2015 deadline, Plaintiff did not file a motion with the Court to extend the deadline. Such a motion was not filed by Plaintiff until November 30, 2015—three weeks after Defendant advised of its objection and thirty days after the October 30, 2015 deadline had expired.

In support of Plaintiff's motion to extend the October 30, 2015 deadline, counsel for Plaintiff represented that she "refrained from incurring the expense of getting all expert reports in place [before mediation on October 22, 2015] as it would make settlement more difficult as a result of the increased costs." (Dkt. No. 46 at 1). On December 8, 2015, Magistrate Judge Cannon denied Plaintiff's motion to extend the October 30, 2015 deadline, finding that Plaintiff had not demonstrated "any effort or diligence" to comply with the January 13, 2015 Scheduling Order; Plaintiff "consciously decided to leave the completion of experts until after mediation"; and Plaintiff failed to explain why he waited one month after the deadline for expert reports to file a motion for an extension of time. (Dkt. No. 51 at 2). In direct violation of Magistrate Judge Cannon's December 8, 2015 Order *denying* Plaintiff's request for an extension, Plaintiff—one day later, on December 9, 2015—filed, without explanation, two expert Notices of Production. (Dkt. Nos. 52, 53).

This sequence of events reveals that the actions of Plaintiff were intentional and taken in conscious and flagrant disregard of the Court's January 13, 2015 Scheduling Order. Counsel for Plaintiff's request to Defendant's counsel that he agree to a thirty-day extension of the October 30, 2015 expert disclosure deadline—which occurred eight days *before* the deadline expired—means that Plaintiff was well aware as early as October 22, 2015 that he had no intention of complying with the Court-ordered deadline. Nonetheless, Plaintiff did not request an extension of the deadline from the Court. Counsel for Plaintiff's follow-up with Defendant's counsel three days after the October 30, 2015 deadline had expired, indicates that Plaintiff was conscious of the expired deadline but again chose not to request an extension of time from the Court. When counsel for Defendant finally objected to counsel for Plaintiff's request for an extension on November 9, 2015, Plaintiff was again reminded of the expired deadline but yet again did not file a motion to extend the deadline at that time. It was not until three weeks later—and one month after the expired deadline—that Plaintiff chose to request an extension of time from the Court. On its face, Plaintiff's conduct speaks volumes.

Not surprisingly, Plaintiff was subsequently unable to provide a credible explanation for what had transpired. During a colloquy with the Court at the April 26, 2016 hearing, counsel for Plaintiff could not explain the three-week delay in filing a motion for an extension of time with the Court, other than by stating that the delay was "inadvertent" and that her co-counsel was waiting for a stipulation from counsel for Defendant. Counsel's inadvertence excuse rings particularly hollow, especially considering that counsel was reminded of the deadline by her communications with Defendant's counsel on three occasions between October 22, 2015 and November 9, 2015. The suggestion that the deadline magically escaped from counsel's mind for a three-week period immediately thereafter simply strains credulity. Even more hollow is the excuse that counsel was waiting for a stipulation from Defendant because that excuse cannot

15

explain the three-week lapse after Defendant registered its objection. In any event, the purpose of waiting for a stipulation—including waiting beyond the Court-ordered deadline—is not apparent because a stipulation is neither necessary nor sufficient to guarantee an extension of time from the Court.

The intentionality and defiance with which Plaintiff acted was further reflected in his conscious and flagrant disregard of the Court's Order denying his Motion for an Extension of Time. One day after the Magistrate Judge entered an Order denying the Motion, Plaintiff—undaunted—filed his expert disclosures anyway. Plaintiff did not seek reconsideration of the Magistrate Judge's ruling. Nor did Plaintiff appeal the Magistrate Judge's ruling to the District Judge. Instead, Plaintiff—without any explanation whatsoever—simply filed his two expert disclosures. Plaintiff's total disregard of the Court's Order and the judicial process suggests a deliberate attempt to circumvent the Magistrate Judge's ruling and avoid the Rules governing discovery.

At the hearing held on April 26, 2016, counsel for Plaintiff attempted to explain the blatant violation of the Magistrate Judge's December 8, 2015 Order denying Plaintiff's request to extend the expert disclosure deadline. Counsel stated that the two expert disclosures were consciously filed after the Court denied Plaintiff's motion because a motion for an extension of the scheduling order and a motion to exclude witnesses require different legal analyses, and Magistrate Judge Cannon's December 8, 2015 Order did not embody the latter analysis. Counsel stated further that, because a motion for an extension of a scheduling order requires an analysis under Rule 16(b)(4) and a motion *in limine* requires an analysis of the *Pennypack* factors, Magistrate Judge Cannon's Order denying his Motion for an Extension of Time did not prevent Plaintiff from filing his expert disclosures after the deadline because a *Pennypack* analysis would be necessary to determine if the witnesses would actually be excluded from the trial. Counsel

16

maintained that Plaintiff's filing was not intended to reflect an intentional violation, or ignoring of, the Magistrate Judge's December 8, 2015 Order but, rather, was the product of a careful analysis of the issue conducted prior to Plaintiff's filing of the two expert Notices of Production.

It is worthy of note that it was not until the Court probed at the April 26, 2016 hearing for an explanation of Plaintiff's filing in the face of a contrary Court Order that this justification was advanced. It was not advanced by way of explanation when Plaintiff filed the Notices of Production. Nor was it even advanced in Plaintiff's Opposition to Defendant's "Motion to Exclude Untimely Disclosed Expert Witnesses," notwithstanding that Defendant noted that the Notices of Production were filed the day after the Court denied Plaintiff's motion for extension of the expert disclosure deadline. (Dkt. No. 55 at 2). The reason the justification was not advanced is obvious; the justification is meritless.

Plaintiff's peculiar explanation suggests that a party can violate the deadlines in a court's scheduling order with impunity, and ignore a court order denying an extension of the deadlines because, in the final analysis, a party's untimely disclosed witnesses must be accepted unless an analysis under the *Pennypack* factors dictates otherwise. Taken to its logical conclusion, a party need not even file a motion to extend the deadlines since an adverse ruling by the court can simply be ignored in anticipation of a second bite at the apple with a *Pennypack* analysis. Plaintiff cited no authority for this novel proposition, which is not surprising as it would vitiate the showing of "good cause" required to modify scheduling orders under Rule 16(b)(4); allow a party to ignore a court order denying an extension of a discovery deadline; disregard the proper procedure—as Plaintiff seeks to do here—for seeking review of a magistrate judge's Order; and allow parties to stand well-established rules and laws for litigation and the Court's authority to manage its docket on their head.

In short, Plaintiff's post-hoc rationalization for his outright defiance of the Magistrate Judge's Order is simply not the law. His unsupported argument cannot mask Plaintiff's flagrant violation of the Magistrate Judge's December 8, 2015 Order. Accordingly, the Court finds wholly unpersuasive, and therefore rejects, Plaintiff's position that his untimely filing of expert disclosures—in the face of a Court Order denying an extension of the filing deadline—was justified.

In sum, Plaintiff's conscious decision not to disclose experts until after mediation; his consciousness of the October 30, 2015 expert disclosure deadline; his inability to provide a credible explanation for the delay of one month after the expert disclosure deadline in filing a motion to extend the Court-ordered deadline; and his conscious decision to disclose experts after the deadline, and in the face of the Court's denial of his motion for extension of time, epitomize willful conduct and a "flagrant disregard" for the judicial process. *See Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994) ("The repeated violations of the scheduling orders, coupled with Exxon's unsatisfactory explanation for the instant violation[,] may be characterized fairly as a willful and bad faith breach intended to[] circumvent the terms of the case management orders."). The fourth *Pennypack* factor, therefore, favors excluding the testimony of Ms. Seyler and Dr. Moore from trial.

Finally, in his Opposition to Defendant's Motion, Plaintiff argues that the Court should excuse the untimely disclosure of Ms. Seyler and Dr. Moore as experts because they are "critical witnesses." (Dkt. No. 58 at 4). However, "even critical evidence may be excluded when the discovery violation is flagrant." *Jerome v. Water Sports Adventure Rentals & Equip., Inc.*, 2013 U.S. Dist. LEXIS 52931, at *6 (D.V.I. Apr. 12, 2013) (citing cases); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (holding that critical evidence may be excluded when party flagrantly or willfully disregards a scheduling order). Here, even accepting,

*arguendo*, that the testimony of Ms. Seyler and Dr. Moore—which will significantly expand the scope of this case—is critical, the willful, flagrant, and inexcusable violations of the Court's Orders, as discussed above, warrant the exclusion of their testimony at trial. Accordingly, the fifth *Pennypack* factor also favors exclusion under the circumstances here.

In sum, the Court finds that each of the five *Pennypack* factors favor excluding the testimony of Ms. Seyler and Dr. Moore at the trial of this matter. Therefore, the Court will grant Defendant's "Motion to Exclude Untimely Disclosed Expert Witnesses."

### B. Motion to Exclude Untimely Disclosed Fact Witnesses

On January 13, 2015, the Court set the deadline for factual discovery—including fact witness depositions—for August 31, 2015. (*See* Dkt. No. 22 at 1). By request of the parties on August 31, 2015, the Court entered an Order on September 1, 2015 extending the factual discovery deadline to September 30, 2015. (*See* Dkt. No. 30). On October 27, 2015—twenty-seven days after the extended deadline had expired and without leave of Court—Plaintiff filed a document entitled "Supplemental Voluntary Disclosures Pursuant to Rule 26," which lists sixteen witnesses described as having knowledge of facts relevant to the case and the alleged harm suffered by Plaintiff. (*See* Dkt. No. 57-1). Of the sixteen witnesses, fifteen were not previously disclosed in Plaintiff's initial disclosures, filed on December 4, 2014. (*See* Dkt. No. 8).[6] Nor was there any other disclosure of fact witnesses by Plaintiff except for the October 27, 2015 disclosure at issue. On December 29, 2015, Defendant filed the instant Motion requesting that the Court exclude the testimony of the untimely disclosed fact witnesses.

In opposition to Defendant's Motion, Plaintiff argues that "Bernadine Hendricks, Rachel Thomas, Sarah Fenton, Ivan James, John Peter, Jaheem Lee, Jamari Lee, Wendy Thomas,

---

[6] Steven Amedee is the one fact witness who was disclosed by Plaintiff in his initial disclosures on December 4, 2014. (*See* Dkt. No. 8). In its Reply, and at the April 26, 2016 hearing, Defendant acknowledged that Steven Amedee was initially disclosed by Plaintiff on December 4, 2014, and noted that his deposition was taken. (*See* Dkt. No. 60 at 1).

Marilyn Flynn, and Clyde Lee were timely disclosed during Plaintiff's deposition," and, therefore, "cannot be excluded." (Dkt. No. 57 at 1). In support of this argument, Plaintiff quotes, *inter alia*, an Advisory Committee Note to Rule 26(e), which states: "There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." FED. R. CIV. P. 26(e) Advisory Committee's Note to 1993 Amendments.

As for the other five witnesses—Dean Haywood, Jennifer Walcott, Levingston Smitten, Felix Dennis, and Terrence Turbe—Plaintiff argues that the untimely disclosure of these "before and after witness[es]" does not harm Defendant. (*Id*.). Specifically, Plaintiff states that Defendant "only took two depositions in this case (Plaintiff's and Steven Amedee)"; Defendant "has failed to take a single deposition of witnesses related to damages;" and Defendant "would not have taken the depositions of these additional five (5) fact damages witnesses." (*Id*. at 1-2). Accordingly, Plaintiff contends that "Defendant has not been prejudiced," and "the extreme sanction of exclusion is unwarranted." (*Id*. at 2).

At the hearing held on April 26, 2016, counsel for Plaintiff conceded that Rachel Thomas, Sarah Fenton, Ivan James, Jaheem Lee, Jamari Lee, Marilyn Flynn, and Clyde Lee were not disclosed to Defendant in Plaintiff's initial voluntary disclosures as individuals with "discoverable information," pursuant to Rule 26(a)(1). Counsel argued, however, that, pursuant to Rule 26(e), these individuals were "otherwise made known" to Defendant during Plaintiff's deposition on September 23, 2015—prior to the close of factual discovery—and that all the information Defendant needed to depose the individuals was made available to Defendant, upon

its request, at that time.[7] In support of this argument, counsel directed the Court to specific excerpts of Plaintiff's deposition testimony. (*See* Dkt. No. 57-2 at 4, 5, 7, 16; *see also* Dkt. No. 57 at 3).

The deposition testimony relied upon by Plaintiff provides, in relevant part, as follows:

**Rachel Thomas**

Q: Starting in about 2010 or so, have you had any long-term or long-running clients that used you on a regular basis?
A: 2010?
Q: Until the present.
A: Several. Several of them.
Q: And are they residences or businesses?
A: Residences.
Q: May I have the name of one of your long-term residential clients?
A: Rachel Thomas. They call her Mona.
Q: Where does Mona reside?
A: Estate La Reine.

(Dkt. No. 57-2 at 4, Plaintiff's Dep. Tr. at 13:1-13).

**Sarah Fenton**

Q: Let me ask you: May I have the name of a second long-term client that Samuel Lee Landscaping had serviced?
A: Sarah Fenton.
Q: And where does Ms. Fenton live?
A: Mon Bijou.

(Dkt. No. 57-2 at 4-5, Plaintiff's Dep. Tr. at 13:21-25; 14:1).

**Ivan James**

Q: Have there been any other long-term clients? Can you give me the name of another long-term client?
A: Ivan. I can't remember his last name.
Q: And where does Ivan reside?
A: In Frederiksted, La Grange.
Q: Do you have contact information for Ivan?
A: His number is changed. No, I think he's off island right now.

(Dkt. No. 57-2 at 5, Plaintiff's Dep. Tr. at 15:17-24).

---

[7] As noted above, in his Opposition to Defendant's Motion, Plaintiff initially argued that Bernadine Hendricks, John Peter, and Wendy Thomas were also made known to Defendant. (*See* Dkt. No. 57 at 1). However, at the April 26, 2016 hearing, counsel for Plaintiff conceded, after reviewing the deposition transcript, that Bernadine Hendricks, John Peter, and Wendy Thomas were not sufficiently disclosed pursuant to Rule 26.

**Jaheem Lee and Jamari Lee**[8]

Q: Let me ask you, how many children do you have?
A: Five.
Q: What are their names and ages, starting with the oldest?
A: Jahmal Lee, Jaheem Lee, and Jahmari Lee, Amani, and Ajahni Lee.
. . . .
Q: Sorry. Your second child.
A: Jaheem.
Q: How old is Jaheem, or when was he born?
A: 1994.
Q: And what about Ja –
A: Jahmari.
Q: Jahmari.
A: 1996
. . . .
Q: Where do these children live?
. . . .
A: Jaheem stays with his mom. Jahmari stays with me, between me and his mom. Really with me. . . .
Q: Did you have anyone assisting you when you worked for Ivan?
A: Yeah.
Q: And who did you have assist you?
A: My son Jaheem . . . .

(Dkt. No. 57-2 at 3-4, Plaintiff's Dep. Tr. at 9:25; 10:1-5; 16-23; 11:6, 11-12; 16:12-16).

**Marilyn Flynn**

Q: Has the accident at Kmart affected your outlook on life?
A: Well, it kind of slow me down in money wise, like wondering how I gonna pay some bills.
Q: Tell me about the bills that you're concerned about.
A: Light bill, light bill, support, paying for my lil kids them, doing for them, put food on the table, pay gas for the car.
Q: Do you know how -- go ahead, I'm sorry.
A: Buying things for my girlfriend for her birthday.
Q: What is her name?
A: Marilyn Flynn.

(Dkt. No. 57-2 at 16, Plaintiff's Dep. Tr. at 61:5-17).

**Clyde Lee**

Q: And what family lives in Florida?
A: My brother.
Q: What is his name?

---

[8] The transcript spells the name Jamari with an "h," whereas Plaintiff spells the name without an "h." The Court spells the name as it is written by Plaintiff.

A: Clyde Lee.
Q: Do you know where he resides, what city?
A: Fort Lauderdale.
Q: What does he do there?
A: He lives there.
Q: Does Mr. Clyde Lee have an employer, or is he employed in Fort Lauderdale?
A: I can't tell you. Not too sure.

(Dkt. No. 57-2 at 7, Plaintiff's Dep. Tr. at 24:18-25; 25:1-3).

These purported "disclosures" fail to comply with the requirements of Rule 26(a)(1). The Court is aware of the Advisory Committee Note to Rule 26(e) upon which Plaintiff relies. However, "the mere mention of an individual's identity during the course of a deposition is not sufficient" to satisfy the requirements of Rule 26(a) and (e). *Eli Lilly & Co. v. Actavis Elizabeth, LLC*, 2010 U.S. Dist. LEXIS 44913, at *13 (D.N.J. May 7, 2010) (citing *Muldrow v. Brooks*, 34 F. App'x 854, 854 (3d Cir. 2002)). Indeed, the Advisory Committee Note to Rule 26(e) would appear to stand a party's disclosure obligations on its head if it were read to suggest that Rule 26(a) and (e) is satisfied by the fortuity of whomever happens to be mentioned in response to whatever questions the opposing party chooses to ask at a deposition. The opposing party is not required, and should not be expected, to go on a fishing expedition to discover information that is clearly subject to Rule 26 voluntary disclosure. Nor should the opposing party be required to assume that everyone who happens to be mentioned or asked about in a deposition is someone whom the disclosing party "may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Nor should the opposing party have to speculate as to "the subjects of [the] information" that the disclosing party "may use to support its claims or defenses." *Id*. Such a haphazard, ad hoc approach to the disclosure requirement is contrary to both the letter and spirit of Rule 26. Thus, while the objective of the disclosure Rule may be satisfied in a deposition, or through other discovery, it is the disclosing party's obligation to ensure that the particular requirements of the Rule are met.

23

In this regard, Rule 26(a)(1) and (e)(1) impose affirmative obligations on a disclosing party to provide disclosures that are "complete and correct" as of the time they are made. FED. R. CIV. P. 26(g)(1)(A).[9] Specifically, Rule 26(a)(1) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). When those disclosures are "incomplete or incorrect," Rule 26(e)(1) requires the disclosing party to supplement its prior disclosures "in a timely manner." FED. R. CIV. P. 26(e)(1)(A). Although Rule 26(e) does not define "in a timely manner," courts have stated that "supplementation must occur 'in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case.'" *Poitra v. Sch. Dist. No. 1*, 2015 U.S. Dist. LEXIS 170650, at *19-20 (D. Colo. 2015) (quoting *United States v. Guidant Corp.*, 2009 U.S. Dist. LEXIS 88106, at *4 (M.D. Tenn. Sept. 24, 2009)). The responsibility for disclosure and supplementation therefore lies squarely with Plaintiff.

Counsel for Plaintiff represented at the April 26, 2016 hearing that the individuals listed in Plaintiff's supplemental voluntary disclosure filed on October 27, 2015 are "before and after" witnesses, who will provide "important" damage testimony about how Plaintiff was before the incident that is the subject of this litigation and after. Notwithstanding their alleged importance, however, at no point prior to the close of the *extended* discovery period—an approximately eight-and-one-half-month time period—did Plaintiff disclose these individuals to Defendant. Indeed, one would expect that individuals who are being offered to testify about Plaintiff's condition before and after the incident would have been well known to Plaintiff from the outset.

---

[9] The certification requirement under Rule 26(g) reinforces the disclosure obligations under Rule 26(a) and (e) by requiring that every disclosure under Rule 26(a)(1) is signed by an attorney of record. FED. R. CIV. P. 26(g)(1)(A) ("By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" a disclosure "is complete and correct as of the time it is made.").

However, as counsel for Plaintiff acknowledged at the hearing, the individuals were never disclosed by Plaintiff prior to the conclusion of discovery, and were mentioned only in response to questions posed by Defendant at Plaintiff's deposition—seven days before discovery closed.[10]

At the April 26, 2016 hearing, counsel for Plaintiff argued that "discovery is not done in a vacuum," and that "there are different avenues to get discovery." However, Rule 26 requires a party, "without awaiting a discovery request," to provide basic information that the party deems important and relevant. *See* FED. R. CIV. P. 26(a) Advisory Committee's Note to 1993 Amendments ("A major purpose of [Rule 26(a)] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the [R]ule should be applied in a manner to achieve those objectives."). Accordingly, Plaintiff had a disclosure obligation under Rule 26 that he simply cannot avoid.

To the extent that Plaintiff learned that his initial disclosures were incomplete, he had a duty to supplement the disclosures "in a timely manner." FED. R. CIV. P. 26(e)(1)(A). Even assuming that Plaintiff could seek to rely on individuals mentioned in Defendant's deposition of him on September 23, 2015 and his October 27, 2015 filing to supplement his December 4, 2014 incomplete initial disclosures, supplementation that occurs seven days before the close of the *extended* discovery period and twenty-seven days *after* discovery closed is not timely. *See Reed v. Washington Area Metropolitan Transit Authority*, 2014 U.S. Dist. LEXIS 89598, at *6 (E.D. Va. July 1, 2014) ("Making a supplemental disclosure of a known fact witness a mere two days before the close of discovery . . . is not timely by any definition."). This is especially so in view of the fact that, per the explicit directive of the Court's Scheduling Order all depositions were to

---

[10] At the April 26, 2016 hearing, counsel for Plaintiff, in response to a line of questions from the Court, requested an opportunity to supplement the record with a list of any fact witnesses disclosed by Plaintiff in response to Defendant's written discovery or otherwise, prior to the September 23, 2015 deposition of Plaintiff. Counsel was granted up to and including May 2, 2016 to file any such document with the Court. (*See* Dkt. No. 75 at 2). On May 2, 2016, counsel for Plaintiff stated in a supplemental filing that "[n]o further documents exist with regard to disclosure of fact witnesses prior to Plaintiff's deposition." (Dkt. No. 77 at 1). In other words, the witnesses were not previously disclosed.

be completed by the conclusion of the factual discovery period. (*See* Dkt. No. 22). Accordingly, the Court finds that, notwithstanding the "otherwise [] made known" language of Rule 26(e), Plaintiff failed to comply with his disclosure obligations under Rule 26(a)(1)(A)(i), as well as his duty to supplement those disclosures "in a timely manner" under Rule 26(e)(1)(A).

Having concluded that Plaintiff failed to satisfy his disclosure obligations under Rule 26 as it relates to Rachel Thomas, Sarah Fenton, Ivan James, Jaheem Lee, Jamari Lee, Marilyn Flynn, and Clyde Lee, the Court must next determine whether exclusion of these seven witnesses is warranted under the circumstances. The Court must also determine whether exclusion of the five witnesses who Plaintiff concedes were not timely disclosed—Dean Haywood, Jennifer Walcott, Levingston Smitten, Felix Dennis, and Terrence Turbe—and the three witnesses Plaintiff acknowledges were not adequately disclosed pursuant to Rule 26—Bernadine Hendricks, John Peter, and Wendy Thomas—is also warranted.

In addressing the *Pennypack* factors, at the hearing held on April 26, 2016, counsel for Plaintiff argued that prejudice is the most important factor that the Court has to consider, and that there will be no prejudice to Defendant if the Court allows Plaintiff's "before and after" witnesses to testify at trial. In support of this argument, counsel asserted that the Court should consider the past discovery practice of Defendant—i.e., whether Defendant had taken any depositions of damage witnesses. According to Plaintiff, Defendant has taken only three depositions in this case—all of which focused on liability—and, therefore, Defendant would not have deposed any of the damage witnesses, even if they were timely disclosed.

As a preliminary matter, the premise of Plaintiff's "no prejudice" argument—that Defendant had not deposed any damage witnesses—must be considered in the context of the witnesses that Plaintiff disclosed during the eight-and-one-half-month factual discovery period. When viewed in context, the specious nature of the premise is clear. Indeed, as noted earlier,

although given almost one week to do so, Plaintiff's counsel was unable to identify a single fact witness that Plaintiff affirmatively disclosed prior to the expiration of the discovery period other than himself and Stephen Amedee—both of whom were deposed by Defendant. *See* n.10, *supra*. The identities of the damage witnesses—who Defendant purportedly failed to depose—and who thus serve as the basis for Plaintiff's criticism of Defendant's past discovery practices and the premise of the "no prejudice" argument—remain undisclosed. To the extent that Plaintiff is referring to the individuals discussed above, who were mentioned when Plaintiff was questioned at his deposition one week before the expiration of the extended discovery period, such a belated "disclosure"—if it can be called a disclosure at all—is a slim reed upon which to ground the argument that Defendant failed to depose damage witnesses.

Even aside from the contextual problem, Plaintiff's argument fares no better on the merits. The Court rejects the proposition that Plaintiff can ameliorate her failures by speculating about what discovery Defendant may or may not have engaged in if Plaintiff had timely disclosed her witnesses in accordance with the applicable Rules. Plaintiff's inability to cite to any legal authority that supports such a proposition is not surprising.[11]   A party's decision as to the discovery in which it will engage, including whether to depose a particular individual, is a matter that is properly left to the party's discretion. There are obviously a number of factors that can bear on such a decision. A party's determination in this regard should not be a matter for the

---

[11] At the April 26, 2016 hearing, counsel for Plaintiff requested an opportunity to provide the Court with case authority that supports the proposition that the Court, in determining prejudice to Defendant, should consider the past discovery practice of Defendant in this case—specifically, who Defendant deposed in the past as indicative of whether Defendant would have deposed a witness who was not timely disclosed. Counsel was granted up to and including May 2, 2016 to file case authority with the Court. (*See* Dkt. No. 75 at 2). On May 2, 2016, counsel submitted a supplemental filing citing *Bedell v. Long Reef Condo. Homeowners Ass'n*, 2014 U.S. Dist. LEXIS 60003, at *18-19 (D.V.I. Apr. 30, 2014), *Joy Global, Inc. v. Wis. Dep't of Workforce Dev.*, 2010 U.S. Dist. LEXIS 12627, at *10 (D. Del. 2010), *Cetlinski v. Brown*, 91 F. App'x 384, 391 (6th Cir. 2004), and *Cochran v. Jackson*, 2015 U.S. Dist. LEXIS 73565, at *8-9 (E.D. Pa. June 8, 2015). However, none of the courts in those cases considered the past discovery practices of the opposing party—in the manner that Plaintiff suggests that the Court should do here—in determining whether that party was prejudiced.

opposing party or the Court to analyze or second-guess, let alone to use as a basis for speculating about whether the party would have deposed a witness who was not timely disclosed.

Contrary to Plaintiff's contention, the Court finds that the eleventh-hour mention in Plaintiff's deposition of seven damage witnesses—which the Court has concluded were not disclosed in a timely manner—and the non-disclosure of eight other damage witnesses, prejudiced Defendant. Defendant did not have a meaningful opportunity during the Court-ordered discovery period to depose these witnesses and, therefore, did not have an opportunity to explore the knowledge that these witnesses have about this case, including the damages that Plaintiff allegedly suffered. To suggest that a party is not prejudiced by the inability to depose *fifteen* witnesses who purportedly will testify in a personal injury case about the extent of Plaintiff's damages borders on the frivolous. Accordingly, the Court finds that the first *Pennypack* factor—"the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified"—favors exclusion.

With regard to the ability to cure, at the April 26, 2016 hearing, counsel for Plaintiff represented that her co-counsel penned a letter to Defendant stating that Plaintiff would help Defendant cure any prejudice Defendant suffered as a result of Plaintiff's untimely disclosure of fact witnesses by making the witnesses available for depositions. However, the default remedy of last-minute depositions undermines the disclosure and supplementation requirements of Rule 26. *See e.g.*, *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp. 2d 1045, 1064 (D. Minn. 1999) (noting that while a continuance and reopening of discovery might alleviate some of the prejudice caused by non-disclosure under Rule 26(a), "such a remedy would wreak its own distinctive prejudice" by unnecessarily prolonging the pretrial process and increasing the expense of litigation), *aff'd in part and vacated in part on other grounds*, 290 F.3d 1364 (Fed. Cir. 2002).

28

The parties were afforded approximately eight and one half months of factual discovery, which should have been more than sufficient to address the needs of this case. Instead, Plaintiff seeks, in effect, a wholesale reopening of factual discovery that—given the large number of witnesses involved—may well result in a renewed and enhanced presentation of his case. This, in turn, might warrant a reinvestigation by Defendant and reconsideration of witnesses that it might present. This cannot be casually dismissed—as Plaintiff would have it—as a minor cure. This would be a major infusion of factual data into the case long after the fact-gathering portion of the case was slated to be concluded.[12]   In short, to reopen discovery and allow Defendant to take *fifteen* depositions at this late stage of the litigation would certainly disrupt these proceedings and delay the trial of this matter. Accordingly, the Court finds that the second and third *Pennypack* factors also favor exclusion.

Finally, even accepting the contention of counsel for Plaintiff that the individuals listed in Plaintiff's supplemental voluntary disclosure are "before and after" witnesses, who will provide "important" damage testimony about Plaintiff's condition before and after the incident at Kmart, the willful and flagrant conduct of counsel warrants excluding the testimony of these witnesses from trial. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (holding that critical evidence may be excluded when party flagrantly or willfully disregards a scheduling order). At the April 26, 2016 hearing, counsel for Plaintiff repeatedly represented that the discovery violations in this case were not willful or flagrant, but rather "inadvertent."[13] However, the Court finds it inconceivable that Plaintiff would have "inadvertently" failed to disclose not one or two, but *fifteen* fact witnesses slated to testify about something as "important" as the

---

[12] This is, of course, in addition to the untimely disclosed expert witnesses which Plaintiff seeks to insert into the case as well.

[13] The only justification counsel for Plaintiff was able to offer for belatedly disclosing Plaintiff's damage witnesses twenty-seven days after discovery had closed was that the witnesses were "inadvertently overlooked."

damages suffered by Plaintiff. Rather, Plaintiff's flagrant violations of the Court's Scheduling Orders, including the disclosure of fifteen damage witnesses twenty-seven days after discovery closed, constitutes willful, inexcusable conduct. Accordingly, the Court finds that the fourth and fifth *Pennypack* factors weigh in favor of exclusion.

Upon consideration of the facts in this case, the applicable Federal Rules of Civil Procedure, and the foregoing analysis of the five *Pennypack* factors, the Court will grant Defendant's "Motion to Exclude Untimely Disclosed Fact Witnesses," and exclude the testimony at trial of Rachel Thomas, Sarah Fenton, Ivan James, Jaheem Lee, Jamari Lee, Marilyn Flynn, Clyde Lee, Dean Haywood, Jennifer Walcott, Levingston Smitten, Felix Dennis, Terrence Turbe, Bernadine Hendricks, John Peter, and Wendy Thomas.

### C. Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report

In the "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report," Defendant argues that Plaintiff untimely disclosed an updated expert report of Dr. Jason Williams on December 2, 2015—thirty-three days after Plaintiff's October 30, 2015 deadline for providing expert opinions—that contains a changed opinion. (*See* Dkt. No. 61). Defendant requests that the Court exclude the "untimely disclosed" updated report of Dr. Williams and "correspondingly limit his testimony" at trial. (*Id.* at 3). In his Opposition to Defendant's Motion, and at the April 26, 2016 hearing, Plaintiff argued that the initial expert report of Dr. Williams—Plaintiff's treating physician and an expert in this case—was timely disclosed to Defendant on October 22, 2015, and that the December 2, 2015 updated report of Dr. Williams was not untimely, but rather a required supplement pursuant to Rule 26(e). (*See* Dkt. No. 62 at 3).

Rule 26(a)(2), which governs the disclosure of expert witnesses, provides that "parties must supplement [expert] disclosures when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E). Rule 26(e)(2) further provides, in relevant part: "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). Here, Plaintiff represents that he received "ongoing treatment" from Dr. Williams on October 23, 2015, and that the updated report of Dr. Williams, filed on December 2, 2015, contains Dr. Williams' "additional impressions" of the October 23, 2015 visit. (Dkt. No. 62 at 1).

Even assuming, without deciding, that the updated report of Dr. Williams, filed on December 2, 2015, was an untimely disclosure of a changed expert opinion, Defendant deposed Dr. Williams on February 26, 2016 and March 12, 2016, and conceded at the April 26, 2016 hearing that it had an opportunity to cure any prejudice that may have resulted from the updated report during Dr. Williams' deposition. Accordingly, the Court finds that exclusion of the updated report of Dr. Williams, and any corresponding testimony, is not warranted. The Court will, therefore, deny Defendant's "Motion to Limit the Testimony of Dr. Jason Williams and Exclude his Untimely Updated Report."

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to demonstrate that her untimely disclosures of Richard Moore, Ph.D., Carla Seyler, MS, CRC, Rachel Thomas, Sarah Fenton, Ivan James, Jaheem Lee, Jamari Lee, Marilyn Flynn, Clyde Lee, Dean Haywood, Jennifer Walcott, Levingston Smitten, Felix Dennis, Terrence Turbe, Bernadine Hendricks, John Peter, and Wendy Thomas were substantially justified or harmless. See FED. R. CIV. P. 37(c)(1). Therefore, the Court will exclude at the trial of this matter the testimony and reports of the experts and the testimony of the fact witnesses. The updated report of Dr. Jason Williams, and

any corresponding testimony, will not, however, be excluded because, even assuming that the report was untimely, Defendant had an opportunity to cure any prejudice that resulted therefrom.

An appropriate Order accompanies this Memorandum Opinion.

Date:  August 15, 2016                    _____/s/_____
                                          WILMA A. LEWIS
                                          Chief Judge