# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| SAMUEL LEE, | ) |
| | ) |
|                Plaintiff, | ) |
| v. | ) |
| | )   Civil Action No. 2014-0079 |
| KMART CORPORATION, | ) |
| | ) |
|                Defendant. | ) |
| | ) |

**Attorneys:**
**Lee J. Rohn, Esq.,**
**Rhea Lawrence, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Carl R. Williams, Esq.,**
**Richard F. Farrelly, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant Kmart Corporation's ("Defendant" or "Kmart") "Motion to Exclude Expert Testimony of Chiropractor, Jason Williams" (Dkt. No. 83), Plaintiff's Opposition thereto (Dkt. No. 84), and Defendant's Reply (Dkt. No. 85). Kmart seeks to exclude the testimony of Plaintiff's expert under Fed. R. Evid. 702 for failure to comply with *Daubert*. (Dkt. No. 83). The Court held an evidentiary hearing and provided the parties the opportunity for supplemental briefing, of which Defendant availed itself (Dkt. No. 92). For the reasons that follow, the Court will deny Kmart's Motion.

I. BACKGROUND

A. Factual Background

The instant case arises from a collision between Plaintiff and an employee of Kmart inside the store on July 27, 2014. (Dkt. No. 1 at 1-2). The Kmart employee allegedly collided into Plaintiff's shopping cart with her own overloaded shopping cart, causing Plaintiff's cart to hit him and resulting in physical injury to Plaintiff.[1] (*Id.*). Plaintiff seeks tort damages for physical injuries, loss of income, loss of capacity to earn income, mental anguish, pain and suffering, and loss of enjoyment of life. (*Id.* at 2).

Three days after the incident, Plaintiff consulted Dr. Jason Williams, a chiropractor, complaining of pain in his left arm and left side of his lower back. (Dkt. No. 84 at 2). Dr. Williams took a history of Plaintiff, consisting of Plaintiff's brief account of the Kmart incident, a description of the location and intensity of the pain, and what Plaintiff was using to manage it. (Dkt. No. 84-4 at 6-7). Plaintiff also filled out a Patient Confidential Health History, in which he included his exercise regimen of playing basketball three to five times per week, and told Dr. Williams of a car accident he had been in three years earlier. (*Id.* at 7). However, Plaintiff did not disclose a second auto accident in which he had been involved. Dr. Williams ran a number of orthopedic tests on Plaintiff in order to determine the nature and extent of his injuries. (*Id.* at 8-14). These tests involved body manipulation, but did not include any imaging such as x-rays or MRIs. (*Id.*).

Dr. Williams issued a report on October 22, 2015 listing Plaintiff's prognosis as "fair." (Dkt. No. 83-2 at 2). Dr. Williams' objective findings were that Plaintiff had: (1) a positive left

---

[1] Plaintiff testified at his deposition that the cart was overloaded with "stuff like pillows, so you couldn't see." (Dkt. No. 84-1 at 14).

supine straight leg raise with reported low back pain; (2) positive Milgram's test with low back pain; (3) negative Pahlen's test (which was positive for elbow pain); (4) positive Mill's test with left lateral elbow pain; (5) positive Cozen's test with left lateral elbow pain; (6) 4/5 muscle grading for resisted wrist extensors; and (7) hypertonicity of left posterior lateral elbow. (Dkt. No. 83-2 at 1).[2] Plaintiff consulted Dr. Williams in a follow-up visit on October 23, 2015, which resulted in a December 2, 2015 report wherein Plaintiff's prognosis was downgraded to "poor" and Dr. Williams' prior objective findings were reaffirmed. (Dkt. No. 83-3).

### B. The Parties' Arguments

Defendant concedes that Dr. Williams is qualified to testify as to his diagnosis of Plaintiff's injuries, but contends that Dr. Williams should not be allowed to testify as to causation or prognosis. (Dkt. No. 85 at 1). Defendant argues that Dr. Williams' failure to take a full medical history and his decision to rely instead on selective self-reporting from Plaintiff undermines the admissibility of Dr. Williams' testimony. (Dkt. No. 83 at 6). Defendant first attacks the reliability of the testimony on this basis, concluding that the failure to obtain a complete medical history or conduct additional examinations renders Dr. Williams' opinion based on nothing more than unsupported speculation. (*Id.* at 6; Dkt. No. 92 at 2). Defendant asserts that because Dr. Williams was unable or unwilling to provide an opinion on whether the force of the collision would be relevant to Plaintiff's treatment, the source of the pain in Defendant's lower back, or the impact of any activities unrelated to the accident, the testimony does not "fit" because Dr. Williams was unaware of the "totality of the evidence surrounding the incident," and is therefore unable to assist

---

[2] Dr. Williams testified at the hearing that a positive result means that pain was reproduced, and a negative result means that the test did not elicit any pain.

the trier of fact. (Dkt. No. 83 at 6). Finally, Defendant points to Dr. Williams' failure to engage in any differential diagnosis as evidence of the lack of fit. (*Id.* at 6-7).

Plaintiff counters that Dr. Williams is qualified by virtue of his education (which concluded in 2012), and several years of subsequent experience. (Dkt. No. 84 at 5-6). In terms of reliability, Plaintiff rests his argument on the contention that Dr. Williams' methods are "good enough" to satisfy *Daubert*'s reliability requirement, and his methods should be tested by cross-examination rather than excluded. (*Id.* at 8-13). He asserts that Dr. Williams' methods are standard procedure, and that Defendant's failure to proffer a competing medical expert undermines its attack on the testimony's reliability. Plaintiff concludes by asserting that there is an appropriate "fit" here because Dr. Williams' testimony will assist the trier of fact in understanding Plaintiff's injuries. (*Id.* at 16).

Defendant responds that it does not require an expert to refute Dr. Williams' methods. Further, it claims that Dr. Williams was not approaching Plaintiff's initial visit with differential diagnosis in mind, and a differential diagnosis in this case would require additional diagnostic tools, such as imaging or blood tests. For these reasons, Defendant asserts that Dr. Williams cannot testify to a reasonable degree of medical certainty.

### C. Testimony

#### 1. Deposition

In his deposition, Dr. Williams was asked how he arrived at the conclusion that Plaintiff's injury was caused by the Kmart incident. He testified that the force of the cart's impact was relevant to treatment "[a]ccording to Mr. Lee." (Dkt. No. 83-1 at 14). Dr. Williams was unable to testify as to whether the injury to Plaintiff's elbow was a result of his work. (*Id.* at 16-17). He was further unable to provide an opinion on the source of Plaintiff's lower back pain, or anything

4

beyond the general account of the accident he had received from Plaintiff. (*Id.* at 18-20). When asked about other potential causes of Plaintiff's pain and prolonged rehabilitation, Dr. Williams replied: "Anything is possible." (*Id.* at 23).

### 2. *Daubert* Hearing

Dr. Williams testified that he was educated at Logan University, and has a license to practice chiropractic medicine in the Virgin Islands. He first encountered Plaintiff at his practice, Williams Family Chiropractic, on July 30, 2014. At the time of the visit, Plaintiff complained of left posterior forearm pain, left elbow pain, and left back pain, and informed Dr. Williams of the incident at Kmart, which had occurred three days earlier. Dr. Williams described the various tests he performed on Plaintiff, and reported his results, which are described above. He asserted that the fact that the results of some of his tests were negative serves to rule in or out alternative diagnoses. Dr. Williams diagnosed Plaintiff with left sacroiliac joint sprain and left forearm epicondylitis, and recommended therapy as a course of treatment. He testified that Plaintiff followed that course of treatment through January 23, 2015.

Dr. Williams testified that the results of his tests were consistent with Plaintiff's self-report of the method of injury. In coming to his conclusion regarding causation, he relied on the mechanism of injury (i.e. collision with the shopping cart) described to him together with his examination of the Plaintiff. He admitted that his tests cannot determine the duration of pain, and therefore he relies on information provided by the patient at intake. Dr. Williams stated further that he does not tell patients what kind of result he is looking for in testing.

With regard to his downgraded prognosis for Plaintiff, Dr. Williams testified that the basis for his change of opinion was Plaintiff's October 23, 2015 office visit. At that time, he performed palpations and observed hypertonicity and edema in the same locations as he had previously

observed. Based on his subjective and objective review of Plaintiff, he downgraded Plaintiff's prognosis because Plaintiff had plateaued: his pain and physical manifestation of injury persisted despite treatment.

Dr. Williams admitted that he did not consider the other possible sources of injury suggested by counsel for Defendant at the hearing when he came to his conclusion regarding causation. With regard to Plaintiff's prior automobile accidents, Dr. Williams testified that he was unaware that Plaintiff had two prior motor vehicle accidents. However, Dr. Williams asserted that he could determine to a reasonable degree of medical certainty that Plaintiff's injury was not caused by those accidents. He maintained that he could so testify because Plaintiff did not have—or at least did not mention—any pain resulting from the accidents at initial intake, and patients typically report any such injuries at intake. He further testified that had Plaintiff's prior accident reports been available to him at the time that he made his report, he would have considered those in addition to the factors he considered in arriving at his conclusions. However, he attested that neither his review of the records relating to Plaintiff's prior accidents nor the fact that Plaintiff plays basketball alters his impression or diagnosis in any way.

## II.    APPLICABLE LEGAL PRINCIPLES

The introduction of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may provide opinion testimony if: (1) the testimony will assist the trier of fact; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.[3] A trial judge "acts as a 'gatekeeper,'

---

[3] The full text of Rule 702 provides as follows:

preventing opinion testimony that does not meet these requirements from reaching the jury." *Mercedes-Benz USA, Inc. v. Coast Auto. Group, Ltd.*, 362 F. App'x 332, 334 (3d Cir. 2010) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-95 (1993)).

The Third Circuit has stated that "Rule 702 has three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge [, *i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact[, *i.e.*, fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (internal quotation marks omitted, alterations in original)); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."). "The party offering the expert must prove each of these requirements by a preponderance of the evidence." *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citing *In re TMI Litig*., 193 F.3d 613, 663 (3d Cir. 1999)).

To qualify as an expert under Rule 702, "the witness [must] possess specialized expertise." *Schneider*, 320 F.3d at 404. The Third Circuit has "emphasized that the 'specialized expertise' requirement is a liberal one: 'a broad range of knowledge, skills, and training [may] qualify an

---

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

7

expert as such.'" *De La Cruz v. V.I. Water & Power Auth.*, 597 F. App'x 83, 91 (3d Cir. 2014) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (hereinafter *Paoli II*)).

To establish reliability, the expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). In assessing whether a particular methodology is reliable, the Third Circuit has held that courts should consider the following non-exhaustive factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Pineda*, 520 F.3d at 247-48 (citations omitted). However, "each factor need not be applied in every case." *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000).

To determine fit, expert testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider*, 320 F.3d at 405) (internal quotation marks omitted)). In other words, it must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Schiff*, 602 F.3d at 173 (quoting *Daubert*, 509 U.S. at 591). The Third Circuit has explained that this requirement is met "when there is a clear 'fit' connecting [an] issue in the case with the expert's opinion[.]" *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citing *Lauria v. AMTRAK*, 145 F.3d 593, 600 (3d Cir. 1998)).

### III. DISCUSSION

Kmart seeks to exclude Dr. Williams' testimony as to the cause of Plaintiff's injuries and Plaintiff's prognosis. (Dkt. No. 85 at 1). Kmart did not challenge Dr. Williams' qualifications as an expert either in its filings or at the hearing. Instead, the challenge is based on the reliability of Dr. Williams' methods, and the fit of the testimony as it relates to the case. For the following reasons, the Court will deny Kmart's request to exclude Dr. Williams' testimony.

**A. Reliable Methodology**

Recognizing that the "evidentiary requirement of reliability is lower than the merits standard of correctness," *Pineda*, 520 F.3d at 241, once an expert has made a sufficient showing that his or her methodology is reliable, the proper venue for the opposing party to attack that expert's assumptions, inferences, and conclusions is at trial via cross-examination. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 154 (1997) ("*Daubert* quite clearly forbids trial judges to assess the validity or strength of an expert's scientific conclusions, which is a matter for the jury.") (Stevens, J., concurring in part and dissenting in part); *De La Cruz*, 597 F. App'x at 92 (observing that "[w]hatever weaknesses" plaintiff's expert identified in defendant's expert's methods, "they were sufficiently grounded in science to be offered in court and then attacked on cross-examination."); *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination" and "[a] party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."); *Walker v. Gordon,* 46 F. App'x 691, 695 (3d Cir. 2002) (opining that the district court's role is "to evaluate whether the *methodology* utilized by the expert is reliable, *i.e.*,

whether, when correctly employed, that methodology leads to testimony helpful to the trier in fact. . . . Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury.").

As noted above, in order to determine whether an expert's methodology is sufficiently reliable, a court engages in a "flexible" inquiry tied to the facts of a particular case. *Daubert*, 509 U.S. at 594. While it is not the Court's role to assess credibility, it "must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *In re TMI Litig.*, 193 F.3d 613, 665–66 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (internal citations omitted). "A court may conclude that there is simply too great a gap between the data and the opinion proffered" and exclude the testimony as unreliable. *Id.* at 666 (internal quotations omitted). The "ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" *Paoli II,* 35 F.3d at 744 (quoting *DeLuca by DeLuca v. Merrell Dow Pharm., Inc.*, 911 F.2d 941, 956 (3d Cir. 1990)).

In assessing reliability, a court should consider the factors set forth above or, if those factors are not pertinent to assessing reliability, it may consider other factors in performing its gatekeeping function. *Kumho Tire,* 526 U.S. at 141-42. Two of the enumerated factors bear mentioning here: whether "standards controlling the technique's operation" exist, and "whether the method is generally accepted." *Pineda*, 520 F.3d at 247-48. The Third Circuit has noted that "the opinion of a doctor who has engaged in few standard diagnostic techniques should be excluded unless the doctor offers a good justification for his or her conclusion." *Paoli II*, 35 F.3d at 761.

### 1. Causation

Differential diagnosis is a respected methodology for opining on medical causation. *See, e.g., Kudabeck v. Kroger Co.*, 338 F.3d 856 (8th Cir. 2003); *Heller v. Shaw Indus., Inc.,* 167 F.3d 146 (3d Cir. 1999). This methodology "can be considered to involve the testing of a falsifiable hypothesis ... through an attempt to rule out alternative possible causes." *Paoli II,* 35 F.3d at 758. "[D]ifferential diagnosis must be properly performed in order to be reliable." *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 254 (3d Cir. 2008) (internal citations omitted).

"To properly perform a differential diagnosis, an expert must perform two steps: (1) 'Rule in' all possible causes of [injury] and (2) 'Rule out' causes through a process of elimination whereby the last remaining potential cause is deemed the most likely cause of [injury]." *Feit*, 271 F. App'x at 254. Where medical expert witnesses testify as to causation, experts who perform only some of the standard procedures for a differential diagnosis must offer an explanation as to why their conclusions remain reliable, and even where standard techniques are employed, experts must "offer [] an explanation if defendants point[] to some likely cause of the plaintiff's [injury] other than the defendants' actions." *Paoli II*, 35 F.3d 717, 762 (3d Cir. 1994). "'[W]here a defendant points to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, that doctor's methodology is unreliable.'" *Heller*, 167 F.3d at 156 (quoting *Paoli II*, 35 F.3d at 759 n.27). "[A] defendant's suggested alternative causes (once adequately addressed by plaintiff's expert) affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony." *Id.* at 156–57 (citing *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997)).

In *Kudabeck*, 338 F.3d at 861-62, on which Plaintiff relies in its Opposition, the Eighth Circuit found that a chiropractor had "performed a sufficient differential diagnosis," in part

because he "relied on more than Kudabeck's word in forming his opinion [as to causation]." In that case, the chiropractor took x-rays of the plaintiff, and ruled out other causes of her pain and injury based on observation of the plaintiff and review of her medical history, and referred plaintiff to another specialist when her condition did not improve as he had anticipated. *Id.* at 857-58. The chiropractor's review of plaintiff's medical history was thorough enough that he was able to rule out genetic sources of the pain and injury. *Id.* at 858.

Dr. Williams testified at the hearing that he performed a number of tests on Plaintiff in order to determine where he was experiencing pain. He further testified that he did not tell Plaintiff the purpose of each test. Dr. Williams concluded that the results of his test were consistent with Plaintiff's account of the Kmart incident, which he considered in arriving at his opinion with regard to causation.

Defendant has pointed to Plaintiff's prior accidents, his basketball playing, and the physical nature of his work as other potential sources for the injury. (Dkt. No. 83 at 6-7; Dkt. No. 92 at 2). Dr. Williams testified at the hearing that although he was not aware of all of these potential factors at the time of the initial office visit,[4] none of these potential sources affect his diagnosis in any way. He explained that his evaluation of Plaintiff suggested that the pain from his previous accidents was resolved prior to the Kmart incident, and that he believed that neither Plaintiff's basketball playing nor his physical labor were causes based on Plaintiff's self-report. Dr. Williams further testified at the hearing that his medical examination was *consistent with* the Plaintiff's self-

---

[4] Dr. Williams' deposition testimony indicates that his history of Plaintiff had uncovered the accident which occurred at Kmart three days earlier; that Plaintiff played basketball three times a week; and that Plaintiff had been in a car accident three years earlier. Dr. Williams stated that he did not recall, and his notes did not reflect, any discussion of the extent of any injuries Plaintiff may have sustained in that car accident. (Dkt. No. 84-4 at 6-7).

report. Such a methodology may not be as thorough as that engaged in by the chiropractor in *Kudabeck*, but is certainly more than mere reliance on the Plaintiff's word. *Kudabeck*, 338 F.3d at 861-62. *Daubert* requires reliability, not perfection. *Paoli II,* 35 F.3d at 744.

Under the applicable legal standard, the Court concludes that Dr. Williams' methodology is sufficiently reliable: his causation testimony is admissible, and the validity and strength thereof is best tested in the crucible of cross-examination. *Joiner,* 522 U.S. at 154 (Stevens, J., concurring in part and dissenting in part); *De La Cruz,* 597 F. App'x at 92; *Stecyk*, 295 F.3d at 414.

### 2. Prognosis

Testimony regarding medical prognosis, like causation, is inherently expert testimony. *Rowland v. Novartis Pharm. Corp.*, 9 F. Supp. 3d 553, 566 (W.D. Pa. 2014); *Pease v. Lycoming Engines*, 2012 WL 162551, at *12 (M.D. Pa. Jan. 19, 2012). As such, it must satisfy Rule 702's reliability requirement in order to be admissible. "The grounds for the expert's opinion merely have to be good, they do not have to be perfect." *Paoli II,* 35 F.3d at 744.

Defendant argues that Dr. Williams did not have good grounds for his prognosis because he performed only orthopedic tests, relied on Plaintiff's representations of his injuries and the incident, did not obtain a detailed medical history, and performed no x-rays or other imaging of Plaintiff. (Dkt. No. 83 at 6). Plaintiff counters that Dr. Williams took a sufficiently probing medical history from Plaintiff, and engaged him in a battery of orthopedic tests that are typical of chiropractic practice. (Dkt. No. 84).

The test for admissibility requires that "'the process or technique the expert used in formulating the opinion is reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (quoting *Paoli II*, 35 F.3d at 742). According to Dr. Williams, his prognosis was based on the patient's self-report and a number of orthopedic tests, which he administered on Plaintiff's first office visit. Dr. Williams further testified that the second, downgraded prognosis on December 2,

2015 was based on his evaluation of Plaintiff performed on October 23, 2015, which revealed that Plaintiff's pain and physical symptoms were not improving[5] despite the fact that Plaintiff had engaged in a long-term course of therapy. Based on the explanation provided, the Court concludes that Plaintiff has shown, by a preponderance of the evidence, that Dr. Williams' prognosis testimony is reliable. *In re TMI Litig*., 193 F.3d at 663; s*ee Paoli II*, 35 F.3d at 758 ("to the extent that a doctor utilizes standard diagnostic techniques in gathering this information, the more likely we are to find that the doctor's methodology is reliable.") Again, any weaknesses in Dr. Williams' assessment can be pursued on cross-examination with the weight and sufficiency of the evidence to be resolved by the jury. *Joiner,* 522 U.S. at 154 (Stevens, J., concurring in part and dissenting in part); *De La Cruz*, 597 F. App'x at 92; *Stecyk*, 295 F.3d at 414; *Walker*, 46 F. App'x at 695.

### B.  Fit

The third requirement of the Rule 702 test mandates that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. The Federal Rules of Evidence "embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997); *see also Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996).

Defendant argues that because Dr. Williams "does not appear to understand or even be aware of the totality of the evidence surrounding the incident," he cannot assist the trier of fact to "understand the evidence or determine a fact in issue" under Rule 702. (Dkt. No. 83 at 6).[6]

---

[5] Dr. Williams described this as a subjective/objective evaluation.

[6] Defendant has argued the issue of differential diagnosis in the context of "fit." Indeed, "[a]s discussed by our Court of Appeals in *Paoli,* the fit prong involves a question of scientific validity." *Bennington Foods, L.L.C. v. St. Croix Renaissance Grp. L.L.L.P.*, 2009 WL 4718099 at *4. Given that Defendant's challenge is grounded in Dr. Williams' methodology—which the Court has

14

Plaintiff, on the other hand, asserts that the expert testimony "should be admitted as it fits the facts of this case and will be helpful to a jury at trial in understanding Plaintiff's injuries." (Dkt. No. 84 at 16).

The Court finds that Dr. Williams' testimony regarding causation and Plaintiff's prognosis is relevant for the purposes of this case and would assist the trier of fact, and therefore satisfies the "fit" requirement of Fed. R. Evid. 702 and *Daubert*. Kmart remains free to challenge what it perceives as an insufficiently probing diagnosis of Plaintiff's condition on cross-examination. *Bennington Foods*, 2009 WL 4718099 at *5 (the question of whether an expert "should have researched further the underlying facts ... 'is a question of weight, not admissibility'").

## IV.   CONCLUSION

For the reasons set forth above, the Court will deny Defendant Kmart's "Motion to Exclude Expert Testimony of Chiropractor, Jason Williams."

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 18, 2017                             _____/s/_____
                                                  WILMA A. LEWIS
                                                  Chief Judge

---

already found to be reliable—Defendant's challenge is no more availing when analyzed through the lens of the "fit" requirement.